UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 11-10042-NMG |
| | ) | |
| MEAD JOHNSON & COMPANY, and | ) | |
| MEAD JOHNSON NUTRITION COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO TRANSFER VENUE AND ON
PLAINTIFF'S MOTION TO DISMISS OR STAY COUNTERCLAIM**

October 5, 2011

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National

Union") has brought this action against its insured, Mead Johnson & Company and Mead

Johnson Nutrition Company (collectively, "Mead Johnson"),[1] seeking a declaratory

judgment that it has no duty to defend or indemnify Mead Johnson, under the terms of a

Commercial General Liability Policy ("Policy"), in connection with six class action

lawsuits that were brought against the defendants by consumers of Mead Johnson's

---

[1] Although Mead Johnson & Company and Mead Johnson Nutrition Company are distinct legal entities, the parties have referred to them collectively as "Mead Johnson."  Accordingly, and for purposes of convenience, this court also will refer to the defendants collectively as "Mead Johnson" or the "defendants" unless otherwise indicated.

Enfamil LIPIL® infant formula (the "Consumer Lawsuits"). The Consumer Lawsuits were filed in various judicial districts, including Massachusetts, and assert state law claims arising out of allegedly false and misleading statements that Mead Johnson made in connection with the labeling, advertising, promotion and marketing of Enfamil LIPIL®. Although one of the underlying lawsuits has been dismissed, the remaining five have been consolidated in the District Court for the Southern District of Florida where they remain pending. In the instant case, National Union is seeking to establish that the claims asserted in the Consumer Lawsuits do not seek to impose damages for "personal and advertising injury," as defined in the Policy (Count I); that the offenses alleged in the Consumer Lawsuits were not committed during the applicable policy period (Count II); and that any coverage for "personal and advertising injury" arising out of the Consumer Lawsuits is subject to various exclusions contained in the Policy (Counts III-VI).

One day prior to the filing of the instant litigation, National Union filed a complaint against Mead Johnson and PBM Products, LLC ("PBM") in the District Court for the Southern District of Indiana (the "Indiana Action"). Therein, National Union is seeking a declaratory judgment that it had no duty to defend or indemnify Mead Johnson, under the same Policy at issue in this case, in connection with a lawsuit which was brought against Mead Johnson by its competitor, PBM, in the District Court for the Eastern District of Virginia, which resulted in a jury verdict against Mead Johnson for $13.5 million in damages (the "PBM Litigation"). The PBM Litigation involved claims for false advertising arising from statements that Mead Johnson had made in a direct-to-

consumer mailer promoting its Enfamil LIPIL® infant formula.  By its complaint in the Indiana Action, National Union is seeking, inter alia, a declaration that the verdict in the PBM Litigation does not involve damages for "personal and advertising injury" under the Policy; that the offenses giving rise to the verdict were not committed during the applicable policy period; and that any coverage for "personal and advertising injury" arising out of the PBM Litigation is subject to the same exclusions that are at issue in the instant matter.  In both this case and the Indiana Action, Mead Johnson has asserted counterclaims against National Union by which it is seeking to establish that National Union is obligated to provide coverage under the Policy for the claims asserted against it in both the Consumer Lawsuits and the PBM Litigation.

As detailed below, the parties dispute whether the Indiana Action and the instant matter should be litigated together in a single forum.  Mead Johnson contends that the two cases are "virtually identical," and that considerations of convenience and justice demonstrate that they should be consolidated for trial before the court in Indiana, where National Union filed its first claims against Mead Johnson.  National Union argues that its claims in the two lawsuits are distinct, involving two different underlying matters and different insurance coverage issues.  Thus, National Union contends that it is both convenient and appropriate to litigate the matters separately, and to honor National Union's selection of Massachusetts as the forum in which to pursue claims arising out of the Consumer Lawsuits, and Indiana as the forum in which to pursue claims arising out of the PBM Litigation.  In addition, National Union contends that it would be inappropriate

to litigate Mead Johnson's counterclaims relating to the PBM Litigation in this lawsuit, and that such claims should be pursued solely in the Indiana Action.

The matter is presently before the court on the "Defendants' Motion to Transfer This Action to the United States District Court for the Southern District of Indiana, or in the Alternative, to Stay the Proceedings" (Docket No. 13), by which Mead Johnson is seeking a transfer of venue, pursuant to 28 U.S.C. § 1404(a) and the first-filed rule, to the District Court for the Southern District of Indiana, or, in the alternative, a stay of this action pending resolution of the Indiana Action. Also pending before the court is "National Union's Motion to Dismiss or Stay Counterclaim" (Docket No. 28), by which National Union is seeking an order dismissing the defendants' counterclaim to the extent that it relates to the PBM Litigation, or alternatively staying those claims pending resolution of the Indiana Action.

For all the reasons detailed herein, this court finds that considerations of convenience and justice favor the transfer of this matter to the Southern District of Indiana. Accordingly, this court recommends to the District Judge to whom this case is assigned that Mead Johnson's motion to transfer (Docket 13) be ALLOWED, and that National Union's motion to dismiss (Docket No. 28) be DENIED AS MOOT.

## II.  <u>STATEMENT OF FACTS</u>[2]

---

[2]  The facts are derived from National Union's Complaint (Docket No. 1) ("Compl."), Mead Johnson's Counterclaim (Docket No. 18) ("Countercl."), and the following materials submitted by the parties in connection with the motion to transfer: (1) the Declaration of Stanley P. Barringer ("Barringer Aff.") (Docket No. 15) and the exhibits attached thereto ("Def. Ex. __");

## The Parties

Plaintiff National Union is an insurance company that is incorporated in Pennsylvania and has a principal place of business in New York, New York. (Compl. ¶ 2; Countercl. ¶ 4). The defendants are makers of infant formula and are incorporated in the State of Delaware. (Barringer Aff. ¶ 1; Compl. ¶¶ 3-4). At the time National Union issued Mead Johnson the Policy, both Mead Johnson & Company and Mead Johnson Nutrition Company maintained their principal places of business in Evansville, Indiana. (Compl. ¶¶ 3-4; Countercl. ¶¶ 2-3). However, Mead Johnson Nutrition Company has since moved its offices to Illinois. (Countercl. ¶ 3).

## The Policy

The Commercial General Liability Policy that National Union issued to Mead Johnson provides coverage for the period February 10, 2009 to February 10, 2010. (Lucas Aff. ¶ 4). Thomas E. Sears, Inc. was Mead Johnson's insurance broker with respect to the Policy. (Id. ¶ 5). Both Thomas E. Sears, Inc. and the underwriter who negotiated the Policy are located in Boston, Massachusetts. (Id. ¶¶ 5-6).

The Policy includes coverage for "personal and advertising injury liability." (See Lucas Aff., Ex. B at 13, 21). In particular, it provides in relevant part as follows:

---

(2) the Declaration of Hal S. Shaftel ("Shaftel Aff.") (Docket No. 33); (3) the Supplemental Declaration of Hal S. Shaftel ("Supp. Shaftel Aff.) (Docket No. 34); (4) the Exhibits attached to National Union's memorandum in opposition to the motion to transfer ("Pl. Ex. __") (Docket No. 25); and (5) the Affidavit of Tara Leigh Lucas ("Lucas Aff.") (Docket No. 26).

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply....

    b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Id. at 13).

The phrase "personal and advertising injury" is defined in the Definitions section of the Policy as follows:

    14.    "Personal and advertising injury" means injury, including consequential "bodily injury" arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement"; or
>
> g. infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Id. at 21).

The Policy also contains sixteen different exclusions relating to personal and advertising injury. (See id. at 13-14). Significantly, it provides that "[t]his insurance does not apply to" the following relevant situations:

> a. **Knowing Violation Of Rights Of Another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."
>
> b. **Material Published With Knowledge Of Falsity**
> "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.
>
> c. **Material Published Prior To Policy Period**
> "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period ....
>
> g. **Quality Or Performance Of Goods – Failure To Conform To Statements**
> "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

(Id.).

-7-

In 2009 and 2010, Mead Johnson's Boston-based insurance broker notified National Union of various lawsuits that had been filed against Mead Johnson. (See Lucas Aff. ¶¶ 1, 7-9). Those lawsuits included the PBM Litigation and the Consumer Lawsuits that are described in more detail below.

## The Indiana Action

On January 6, 2011, National Union filed its Complaint for Declaratory Judgment against Mead Johnson & Company, Mead Johnson Nutrition Company and PBM in the District Court for the Southern District of Indiana. (Def. Ex. A). By its Complaint in the Indiana Action, National Union is seeking a declaration that it had no obligation to defend or indemnify Mead Johnson, under the terms of the Policy, with respect to the underlying PBM Litigation. (Id. ¶ 1). By naming PBM as a defendant in the litigation, National Union was not seeking separate relief or judgment against PBM, but rather was seeking to bind PBM to the outcome of the coverage dispute between National Union and its insured. (Id. ¶ 5).

As alleged by National Union in the Indiana Action, the underlying PBM Litigation was brought against Mead Johnson by its competitor, PBM, in the District Court for the Eastern District of Virginia. (Id. ¶ 9). Therein, PBM alleged that Mead Johnson had engaged in a false advertising campaign against it by falsely stating that Mead Johnson's brand of infant formula, Enfamil LIPIL®, was the only infant formula containing two fats, docosahexaenoic acid ("DHA") and arachidonic acid ("ARA"), which enhance brain and eye development in babies. (Id. ¶ 12). The statements were

contained in a mailer that Mead Johnson distributed to 1.6 million consumers throughout the country between June 2008 and April 2009. PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 117 (4th Cir. 2011). Based on those statements, PBM asserted claims against Mead Johnson for violations of the Lanham Act, 15 U.S.C. § 1125(a), and for commercial disparagement. Id.

The PBM Litigation proceeded to trial before a jury on PBM's claim of false advertising under the Lanham Act. See id. at 118. On November 10, 2009, the jury returned a verdict against Mead Johnson, and awarded PBM $13.5 million in damages. Id. The court entered the verdict in the PBM Litigation on about November 13, 2009. (Def. Ex. A ¶ 17). The judgment was affirmed on appeal to the Fourth Circuit in April 2011. PBM Prods., 639 F.3d at 128. National Union alleges that Mead Johnson did not notify it of the jury verdict until December 29, 2009, approximately seven weeks after the jury returned its verdict. (Def. Ex. A ¶ 18). The plaintiff further alleges that as a result of the late notice, it was deprived of an opportunity to investigate PBM's claim and participate in the defense of the PBM Litigation. (Id. ¶ 18-19).

As set forth in its complaint in the Indiana Action, National Union claims that it has no duty to defend or indemnify Mead Johnson with respect to the PBM Litigation because the insured failed to provide notice of the underlying lawsuit "as soon as practicable," or to immediately send National Union copies of any demands, notices, summonses, or legal papers received in connection with the PBM Litigation, as required under the terms of the Policy. (Id. at Counts I-II). Additionally, National Union claims

that it has no obligation to provide coverage with respect to the PBM Litigation because the jury verdict does not seek to impose damages for "personal and advertising injury" as defined in the Policy (id. at Count III); any "personal and advertising injury" arising from the PBM Litigation was not caused by an offense committed during the applicable policy period (id. at Count IV); and any damages that Mead Johnson may have been obligated to pay due to "personal and advertising injury" are subject to the exclusions described above for "Material Published Prior To Policy Period," "Quality Or Performance Of Goods – Failure To Conform To Statements," "Knowing Violation Of Rights Of Another," and "Material Published With Knowledge Of Falsity," (id. at Counts V-VIII). National Union is seeking a declaratory judgment in its favor on each of its claims. (See id. at pp. 14-15).

On January 12, 2011, National Union filed a motion in the Indiana Action requesting a transfer of venue from the Indianapolis Division to the Evansville Division of the Southern District of Indiana on the grounds that the defendants "have their principal place of business in Evansville, Indiana." (Def. Ex. D). The court granted the motion on January 21, 2011, and ordered that the matter be transferred to the Evansville Division for all further proceedings. (Def. Ex. E).

Subsequently, on March 22, 2011, Mead Johnson filed its Answer, Counterclaims and Demand for Jury Trial in the Indiana Action. (Def. Ex. F). Significantly, by its counterclaims, Mead Johnson is seeking to establish, among other things, that National Union owes the defendants full coverage under the Policy in connection with nine

lawsuits that were filed against Mead Johnson in various federal courts throughout the country.  (See id. at Counterclaims).  Those lawsuits include, but are not limited to, the PBM Litigation and five of the Consumer Lawsuits that gave rise to the present litigation in this court. (See id. at Counterclaims ¶ 12).  National Union is seeking to have the counterclaims dismissed to the extent they concern the Consumer Lawsuits.  (Pl. Opp. Mem. (Docket No. 25) at 6).

On April 6, 2011, Mead Johnson amended its counterclaims in order to add Lexington Insurance Company ("Lexington") as an additional counterclaim defendant in the Indiana Action.  (See Supp. Shaftel Aff., Ex. 1 ¶ 2; Pl. Ex. B).  Mead Johnson alleges that Lexington is a corporate affiliate of National Union, and that Lexington issued Mead Johnson an Umbrella Liability Policy providing coverage for the same period as the Policy.  (Pl. Ex. B at Counterclaims ¶ 8).

On May 24, 2011, National Union filed a motion to have PBM voluntarily dismissed from the Indiana Action.  (Supp. Shaftel Aff., Ex. 1).  In support of its motion, National Union explained that the judgment in the PBM Litigation has been satisfied in full, and that PBM agrees that it has no rights and will not to seek to obtain any sums from National Union or Lexington in connection with the judgment.  (Id. ¶¶ 4-5).  Additionally, National Union stated that "PBM contends that there is no longer any actual or potential controversy as between National Union, Lexington and PBM."  (Id. ¶ 5).  The record does not indicate whether the court has dismissed PBM from the case.

**The Present Lawsuit**

On January 7, 2011, one day after it filed the Indiana Action, National Union filed a Complaint for Declaratory Judgment in this court by which it is seeking a declaration that it has no obligation to defend or indemnify Mead Johnson, under the terms of the Policy, with respect to the Consumer Lawsuits. (Docket No. 1). For purposes of this action, National Union is represented by counsel from the Chicago law firm of Bates Carey Nicolaides LLP, the same firm that represents National Union in the Indiana Action. (Barringer Aff. ¶ 14). National Union claims that it was not able to bring this action in Indiana because the federal courts in that state require the underlying claimant to be named as a defendant in a declaratory judgment action by an insurer against its insured, and the Indiana court has no personal jurisdiction over the named plaintiffs in the Consumer Lawsuits. The plaintiff has not indicated why it did not file all of its coverage claims in this court.

As National Union alleges in it Complaint, the Consumer Lawsuits consist of six consumer class actions that were filed against Mead Johnson in various federal courts throughout the country by purchasers of Mead Johnson's Enfamil LIPIL® infant formula.[3] (Compl. ¶¶ 8-26). One of those actions, <u>Martin v. Mead Johnson Nutrition Co.</u>

---

[3] According to Mead Johnson, there are three additional consumer class actions that have been filed against Mead Johnson based on the same conduct complained of in the Consumer Lawsuits. (Barringer Aff. ¶ 17). Those cases were brought in the District Courts for the District of Colorado and the Northern District of California. (<u>Id.</u>). According to National Union, those cases have not been included as part of the Consumer Lawsuits that National Union identified in its Complaint because Mead Johnson never submitted a claim under the Policy with respect to those actions. (Pl. Opp. Mem. (Docket No. 25) at 2 n.1).

& Mead Johnson & Co., C.A. No. 09-cv-11609 NMG, was filed in this court. (See Compl., Ex. A). The remaining cases were filed in federal courts located in Florida, California, Alabama and New Hampshire. (See Compl., Exs. B-F).

Generally, each of the plaintiffs in the Consumer Lawsuits claims that Mead Johnson engaged in unlawful and deceptive conduct in connection with the labeling, advertising, promotion and marketing of Enfamil LIPIL® by making false and misleading statements and representations indicating that Enfamil LIPIL® is the only infant formula containing two fats, DHA and ARA, which promote brain and vision development in infants. (See, e.g., Compl., Ex. A ¶¶ 1-6, Ex. C ¶ 1, Ex. F ¶¶ 1-6). They further contend that as a result of Mead Johnson's actions, they and other class members have paid higher prices for Enfamil LIPIL® than they would have paid for competing products that provide the same benefits as Mead Johnson's formula. (See, e.g., Compl., Ex. A ¶ 34, Ex. B ¶ 5, Ex. D ¶ 5). By their complaints, the plaintiffs are seeking to hold Mead Johnson liable for unjust enrichment, as well as for violations of state laws pertaining to false advertising and unfair and deceptive practices. (See Compl. ¶¶ 10, 13, 16, 19, 22, 26).

Although the statements challenged in the Consumer Lawsuits are not confined to statements that Mead Johnson made in the mailer at issue in the PBM Litigation, the named consumer plaintiffs allege that their claims concern "the same conduct and the same advertising and marketing campaign" that was the subject of the claims in the PBM Litigation. (See, e.g., Compl., Ex. A ¶ 8, Ex. C ¶ 26, Ex. F ¶ 8). Thus, the plaintiffs have

alleged facts relating to the PBM Litigation in support of their claims in the Consumer Lawsuits. (See id.).

One of the class actions identified by National Union as part of the Consumer Lawsuits was voluntarily dismissed on July 20, 2010. (Compl. ¶ 23). The remaining five actions were transferred to the District Court for the Southern District of Florida for consolidation, along with other consumer class actions against Mead Johnson, in a case captioned In re Enfamil Lipil Marketing & Sales Practices Litig., Case No. 0:11-MD-02222-Cohn. (See Barringer Aff. ¶¶ 20-22; Def. Ex. G). On March 18, 2011, the Florida court issued an order preliminarily approving a class action settlement, conditionally certifying a nationwide class, and providing for notice and a scheduling order. (Barringer Aff. ¶ 23). The preliminarily certified class consists of

> [a]ll purchasers of Enfamil LIPIL® infant formula in the United States between October 13, 2005, through and including March 31, 2010. Excluded from the Class are those who received Enfamil LIPIL® through the United States Department of Agriculture's Women, Infants, and Children program ("WIC") and those who purchased for the purpose of resale.

(Def. Ex. H ¶ A.1.). The Florida court is expected to make a final determination shortly as to whether the Class claims should be certified for settlement purposes and whether to approve the parties' proposed settlement. (See id. ¶ B.7.(a)).

By its Complaint in the instant action, National Union claims that it owes no duty to defend or indemnify Mead Johnson under the Policy because the Consumer Lawsuits do not seek to impose damages due to "personal and advertising injury" as defined in the

Policy (Count I); any "personal and advertising injury" that gave rise to the Consumer Lawsuits was not caused by an offense committed during the applicable policy period (Count II); and any damages that Mead Johnson may become obligated to pay due to "personal and advertising injury" are subject to the same four exclusions alleged by National Union in the Indiana Action. (Counts III-VI). Thus, although National Union does not allege that Mead Johnson failed to provide timely notice of the Consumer Lawsuits, its claims are otherwise based on the same provisions of the Policy as its claims in the Indiana Action. As is the case in that Action, National Union is seeking a declaratory judgment in its favor on each of its claims in the instant case.

On April 5, 2011, Mead Johnson filed an Answer and Counterclaim in this action. (Docket No. 18). By its counterclaim, Mead Johnson is seeking to establish, among other things, that National Union owes the defendants full coverage under the Policy for defense costs and losses incurred by Mead Johnson in connection with the same nine lawsuits giving rise to Mead Johnson's counterclaims in the Indiana Action, including but not limited to, the PBM Litigation and five of the Consumer Lawsuits. (See id. at Counterclaim). However, unlike in the Indiana Action, Mead Johnson has not asserted any claims against Lexington in this action.

Additional factual details relevant to this court's analysis are set forth below where appropriate.

### III.  ANALYSIS

### A.  Defendants' Motion to Transfer Venue

The defendants have moved to transfer this matter, pursuant to 28 U.S.C. § 1404(a), to the District Court for the Southern District of Indiana, Evansville Division, where the Indiana Action is presently pending. Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The statute "'is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (additional quotations and citation omitted). Thus, in making a determination as to whether a transfer is warranted, the court must remain "mindful that the statute's purpose is 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" World Energy Alts., LLC v. Settlemyer Indus., Inc. , 671 F. Supp. 2d 215, 217 (D. Mass. 2009) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). "'Where identical actions are proceeding concurrently in two federal courts . . . the first filed action is generally preferred in a choice-of-venue decision.'" Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (quoting Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987)). "The burden of proof rests with the party seeking transfer[.]" Id.

National Union maintains that this action could not have been brought in Indiana, that the differences between this action and the Indiana Action preclude a change of venue under the first-filed rule, and that considerations of convenience and fairness support its choice of forum. For the reasons that follow, this court finds that National Union has not established that it could not have brought this action in Indiana, and that consideration of the factors relevant to a motion to transfer under § 1404(a) favors a transfer of venue to the Southern District of Indiana.

### i. Ability to Maintain Suit in Indiana

National Union argues, as an initial matter, that this action could not have been filed in Indiana. According to the plaintiff, federal courts in that state "hold that a third party claimant in the underlying action against the insured is a necessary party to a declaratory judgment action brought by the insurer[,]" and "the Indiana Court does not have personal jurisdiction over any of the named plaintiffs in the [Consumer Lawsuits]." (Pl. Opp. Mem. (Docket No. 25) at 6-7). However, the Seventh Circuit has not decided "whether the injured party is a necessary party in a declaratory judgment action." Emp'rs Mut. Cas. Co. v. Witham Sales & Serv., Inc., No. 2:08 cv 233, 2009 WL 4281457, at *5 (N.D. Ind. Nov. 23, 2009) (slip op.). Moreover, the district courts of Indiana which have addressed the issue at all, have not addressed it in the context present here — class action suits where the named plaintiffs cannot be sued in Indiana, and the insured has brought a counterclaim seeking coverage. See, e.g., Am. Standard Ins. Co. of Wisconsin v. Rogers, 123 F. Supp. 2d 461, 467-68 (S.D. Ind. 2000) (finding that injured party was a

"necessary" party where default judgment against insured threatened injured party's ability to protect his interest in insurance policy proceeds and created risk of inconsistent judgments for the insurer). Furthermore, there are a number of coverage cases which proceeded in Indiana without the injured party. In fact, National Union has moved to dismiss PBM from the Indiana Action, making it clear that there is no per se rule precluding coverage litigation relating to the Consumer Lawsuits from proceeding in Indiana. As detailed herein, this court cannot conclude that National Union could not have brought this action in Indiana.

In support of its argument, National Union relies exclusively on the Indiana District Court's decision in Employers Mutual Casualty Company. In that case, the District Court for the Northern District of Indiana determined, "[b]ased on the facts presented by the case at hand," that the plaintiff in the underlying suit against an insured was a necessary party, pursuant to Fed. R. Civ. P. 19(a),[4] in the insurer's declaratory judgment action regarding its duty to defend. See Emp'rs Mut. Cas. Co., 2009 WL 4281457, at *6. In reaching its decision, the court emphasized that its determination as to

---

[4] Rule 19(a)(1) provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

whether the injured party was a necessary party was dependent upon the nature of the declaratory judgment action. As the court explained:

> Whether the injured party is a necessary party under Rule 19 depends on the relationship of the parties, in particular, who has brought the declaratory judgment action and for what purpose. <u>When an insured sues its insurer for a declaration of coverage, the injured party's interest is presumed to be adequately protected, thus making the insured and injured party's interest so sufficiently similar that joinder of the injured party is unnecessary.</u> However, a majority of courts have held that the injured party is a necessary party to a declaratory judgment action brought by the insurer against the insured when the insurer's motion seeks to determine policy coverage, not merely a duty to defend.

<u>Id.</u>, 2009 WL 4281457, at *5 (citations omitted; emphasis added). Because the court found that the injured party had an interest in the policy proceeds, and "a final judgment about policy coverage in his absence would break from the public policy that he should be able to be heard on this matter[,]" the court determined that he was a necessary party to the declaratory judgment action. <u>Id.</u>, 2006 WL 4281457, at *6.

Nothing in the court's decision in <u>Employers Mutual</u> establishes a <u>per se</u> rule that an insurer may not maintain a declaratory judgment action against its insured without joining the injured party as an additional defendant, and this court has not been able to identify any other case from Indiana which establishes such a rule. Moreover, because the <u>Employers Mutual</u> court concluded that joinder of the injured party was possible under Rule 19(a), it had no occasion to apply Fed. R. Civ. P. 19(b), which would apply in the instant case. <u>See id.</u> Rule 19(b) provides in relevant part that "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in

equity and good conscience, the action should proceed among the existing parties or should be dismissed." Thus, the court did not address the question whether an injured party who cannot be joined due to lack of personal jurisdiction must be considered an indispensable party to the action under Rule 19(b).

Federal courts in Indiana have allowed insurers to maintain declaratory judgment actions against their insureds without naming the injured party as a defendant. See, e.g., St. Paul Travelers Cos., Inc. v. Corn Island Shipyard, Inc., 437 F. Supp. 2d 837 (S.D. Ind. 2006) (declaratory judgment action by insurer against its insured regarding coverage for accident involving severe injury to underlying claimant); Liberty Surplus Ins. Corp. v. Tau Kappa Epsilon Fraternity-Mu Alpha Chapter, No. 1:09-cv-1327-SEB-DML, 2010 WL 2024631, at *1 (S.D. Ind. May 19, 2010) (allowing motion of underlying tort claimants for permissive intervention in declaratory judgment action brought by insurer against insured). Moreover, given the class action nature of the Consumer Lawsuits, it does not appear to this court that adding a named plaintiff to the coverage litigation between National Union and Mead Johnson would be necessary to protect the injured parties' interests. Given what is at stake for Mead Johnson, and the fact that Mead Johnson, as the insured, has "sue[d] its insurer for a declaration of coverage," this case is more akin to the situation recognized by Employers Mutual where "the insured and injured party's interests [are] so sufficiently similar that joinder of the injured party is unnecessary." Emp'rs Mut. Cas. Co., 2009 WL 4281457, at *5. For all these reasons,

this court concludes that this action "might have been brought" in the Southern District of

Indiana. See 28 U.S.C. § 1404(a).

ii.    **Application of the First-Filed Rule**

The parties dispute whether the "first-filed rule" warrants a transfer of this case to

Indiana where it may be consolidated with the Indiana Action. "Under the 'first-filed

rule,' 'where *identical* actions are proceeding concurrently in two federal courts, the first

filed action is generally preferred, even if it is a request for a declaratory judgment.'"

World Energy Alts., LLC, 671 F. Supp. 2d at 218 (quoting Holmes Group, Inc. v.

Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 15 (D. Mass. 2002) (punctuation

omitted)). The defendants assert that the first-filed rule applies where two cases are

"similar," and not simply where the cases are "identical." (Def. Reply Mem. (Docket No.

32) at 5). They further assert that, due to the overlap between this case and the Indiana

Action, this case should be transferred to Indiana, where National Union's claims were

first filed. (Def. Mem. (Docket No. 14) at 17-18).

National Union argues that the first-filed rule is inapplicable here because this

matter is distinct from the Indiana Action and involves a different set of operative facts.

For example, but without limitation, the plaintiff emphasizes the fact that the PBM

Litigation involves claims relating to insufficient notice, while the instant case contains

no such claims or allegations. (Pl. Opp. Mem. at 11). It also points out that the

Consumer Lawsuits involve state law claims arising from statements made by Mead

Johnson in various advertisements, labels, websites and mailers distributed to consumers

beginning as early as 2005, whereas the PBM Litigation involves federal Lanham Act claims, brought by a single competitor of Mead Johnson, based on statements made in a mailer that was distributed to consumers for a limited period between June 2008 and April 2009.  (Id. at 9-10).

This court does not need to decide whether the first-filed rule is controlling here. Even assuming, without deciding, that the cases are too dissimilar to trigger application of the first-filed rule, for the reasons detailed below, when the factors relevant to the § 1404(a) analysis are applied to the circumstances of this case, they support a transfer of venue to the Southern District of Indiana "'[f]or the convenience of the parties and witnesses, in the interest of justice.'"  Coady, 223 F.3d at 11 (quoting 28 U.S.C. § 1404(a)).[5]

###     iii.     **Consideration of Relevant Factors**

Having concluded that the case might have been brought in the Southern District of Indiana, this court must determine whether convenience and the interest of justice favor a change of venue.  In making this decision, "[t]he Court may consider a number of factors, including: 1) the plaintiff's choice of forum, 2) the convenience of the witnesses and location of documents, 3) the law to be applied, 4) the connection between the forum

---

[5]  Because it is unnecessary to decide whether the Indiana Action and this action are sufficiently similar to trigger application of the first-filed rule, it also is unnecessary to address National Union's argument that the two cases do not arise out of the same transaction or occurrence, as illustrated by the fact that Mead Johnson's counterclaim in this case is permissive rather than compulsory to the extent it concerns the PBM Litigation, and by the fact that Mead Johnson's counterclaim in the Indiana Action is permissive rather than compulsory to the extent it concerns the Consumer Lawsuits.

and the issues, 5) the state or public interests at stake and 6) the relative convenience of the parties." World Energy Alts., 671 F. Supp. 2d at 218. The court also may consider "the possibility of consolidation[.]" Coady, 223 F. 3d at 11. Consideration of these factors compels the conclusion that transfer is warranted.

## Plaintiff's Choice of Forum

Ordinarily, "there is a strong presumption in favor of the plaintiff's choice of forum." Id. In particular, "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient." Piper Aircraft Co. V. Reyno, 454 U.S. 235, 255-56, 102 S. Ct. 252, 266, 70 L. Ed. 2d 419 (1981). However, when the plaintiff selects a different forum, "this assumption is much less reasonable" and "deserves less deference." Id. at 256. See also United States ex rel. Ondis v. City of Woonsocket, R.I., 480 F. Supp. 2d 434, 436 (D. Mass. 2007) ("the plaintiff's venue choice is to be given less weight if . . . the plaintiff is a nonresident of the chosen forum . . . ." (quotations and citation omitted)). As described above, National Union is neither incorporated in Massachusetts nor maintains its principal place of business here. Moreover, the fact that National Union has brought a coverage action in the Southern District of Indiana, using the same law firm which is representing it here, compels the conclusion that the transferee district would be at least as convenient to National Union as Massachusetts. Accordingly, under the circumstances presented in this case, this court finds that the plaintiff's choice of forum is entitled to little deference.

## Convenience of Witnesses

This court also finds that the convenience of the expected witnesses favors a transfer of venue. "The convenience of the witnesses is probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. § 1404(a)." United States ex rel. Ondis, 480 F. Supp. 2d at 437 (quotations, citations and punctuation omitted). The plaintiff has identified three potential witnesses who are present in Massachusetts, including the insurance broker who procured the Policy on behalf of Mead Johnson, the underwriter who negotiated the Policy, and Gina Martin, a named plaintiff in the Consumer Lawsuits. (See Lucas Aff. ¶¶ 5-6; Compl., Ex. A ¶ 13). For its part, Mead Johnson has identified nine potential witnesses who are located or perform work in Indiana. (See Barringer Aff. ¶¶ 32-33). According to the defendants, those individuals have knowledge regarding the advertising and marketing campaign at issue in the Consumer Lawsuits; the composition of Enfamil LIPIL® and the scientific support for the claims made by Mead Johnson in its advertising; sales and financial issues relating to Enfamil LIPIL®; and dealings between Mead Johnson and National Union regarding the claims at issue in this case. (Id.). Moreover, the defendants assert that all of the Mead Johnson personnel who were involved in the negotiation of the Policy and interacted with the company's insurance broker are located in Indiana and Illinois, and that all of the individuals who testified on behalf of the defendants in one of the underlying Consumer Lawsuits are located in Evansville, Indiana. (Barringer Aff. ¶¶ 29, 32).

National Union argues that any testimony of witnesses identified by Mead Johnson as having knowledge about the advertising, marketing and manufacture of Enfamil LIPIL® will have little relevance to the coverage issues presented in this case because the question whether the claims asserted in the Consumer Lawsuits are covered under the Policy will depend primarily on the allegations in the underlying complaints and any evidence supporting a judgment in that litigation. (See Pl. Opp. Mem. at 15-16). Thus, according to the plaintiff, "the operative facts relevant to any [coverage] analysis are limited to a review of the Underlying Consumer Lawsuits and the National Union Policy." (Id. at 9). To the extent additional evidence is needed, National Union contends that the most likely source of information will be the named plaintiffs in the Consumer Lawsuits, including Gina Martin who resides in Massachusetts. (Id. at 16).

The plaintiff's argument fails to acknowledge the fact that several of its claims against Mead Johnson concern the application of exclusions relating to Mead Johnson's knowledge and conduct. Those claims raise factual questions as to whether Mead Johnson had knowledge that its actions "would violate the rights of another and would inflict 'personal and advertising injury'"; whether any oral or written material giving rise to any "personal and advertising injury" was created "by or at the direction of [Mead Johnson] with knowledge of its falsity"; and whether the first publication of any oral or written material giving rise to "personal and advertising injury" "took place before the beginning of the policy period." (Compl., Counts IV-VI). It is unlikely that the evidence necessary to resolve these claims will be found exclusively, if at all, in the records of the

-25-

underlying Consumer Lawsuits. Moreover, National Union has acknowledged that the defendants' witnesses possess knowledge of facts relating to the exclusions.[6] (See Pl. Opp. Mem. at 16). Accordingly, Mead Johnson has shown that the testimony of its witnesses is relevant to the issues in this case, and that it will be more convenient for them to have the matter proceed in Indiana.

National Union also argues that because Mead Johnson's witnesses are company employees, any inconvenience they might face by having to litigate this action in Massachusetts would be minimal. (Pl. Opp. Mem. at 17). Ordinarily, the ability of a corporate defendant to secure the appearance of its employees would diminish any concern raised by the location of those witnesses outside the forum where the action is pending. See Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125-26 (D. Mass. 2000) ("If . . . a court order or the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of the forum, [the convenience of the witnesses] becomes less important."). In this case, however, the existence of a similar lawsuit in Indiana presents the possibility that those witnesses will be called upon to testify in two separate proceedings in two separate states. Both this action and the Indiana Action arise out of Mead Johnson's advertising campaign regarding its Enfamil LIPIL® infant formula, and involve claims concerning the same

---

[6] The plaintiff argues that "[i]t is only to the extent that exclusions may need to be litigated ... that any of [Mead Johnson's] witnesses might be implicated." (Pl. Opp. Mem. at 16). Because the exclusions form the basis for a number of National Union's claims, they will need to be litigated.

provisions of the Policy. Most if not all of the witnesses identified by Mead Johnson in this action possess information that is equally applicable to the Indiana Action. The prospect of having witnesses testify in two different proceedings would undermine the purpose of the transfer statute to protect litigants and witnesses from "unnecessary inconvenience and expense." Wiley v. Gerber Prods. Co, 667 F. Supp. 2d 171, 172 (D. Mass. 2009) (additional quotations and citation omitted). Therefore, Mead Johnson has shown that it would be significantly more convenient for its witnesses for the case to proceed in Indiana.

This court also finds that any inconvenience caused to National Union's witnesses as the result of a transfer is likely to be minimal. National Union has identified only three witnesses who are located in Massachusetts, and it has indicated that only one of those witnesses, Gina Martin, is likely to possess information that is critical to the principal issues in the case. (See Pl. Opp. Mem. at 15). Additionally, Ms. Martin is only one of five named plaintiffs in the ongoing Consumer Lawsuits. Even if Ms. Martin were unwilling to travel to Indiana to testify at trial, National Union may be able to convince other plaintiffs to do so. Thus, the convenience of the witnesses would be best served by granting the defendants' motion to transfer venue.

### Location of Documents

Mead Johnson has submitted evidence indicating that potentially relevant documents are located in Indiana. (See Barringer Aff. ¶¶ 34-39). Those documents include, but are not limited to, materials describing the scientific analyses used to create

Enfamil LIPIL® and support Mead Johnson's advertising campaign; documents regarding the labeling and advertising of Enfamil LIPIL®; documents pertaining to the negotiation of the Policy and placement of coverage; and records reflecting communications between Mead Johnson and National Union regarding the Consumer Lawsuits. (Id.). National Union, for its part, has not identified any specific documents that are currently located in Massachusetts. Accordingly, this factor too weighs in favor of transfer.

The plaintiff argues that "one can safely assume that [the documents identified by the defendants] are largely electronic documents and if 'most of the relevant documents are electronic, the physical location of such documents is inconsequential.'" (Pl. Opp. Mem. at 16-17) (quoting Jagex Ltd. v. Impulse Software, Civ. Action No. 10-10216-NMG, 2010 WL 3257919, at *5 (D. Mass. Aug. 16, 2010)). However, there is no evidence in the record to substantiate this assumption. Nor is there any evidence showing that any non-electronic documents are located in Massachusetts rather than in Indiana.

## Applicable Law

The defendants argue that Indiana law is likely to apply to the present dispute, while National Union asserts that it is too early to determine which jurisdiction's law is likely to apply. (See Def. Mem. (Docket No. 14) at 13-14; Pl. Opp. Mem. at 18-19). This court concludes that a determination regarding the choice of law to be applied must await further development of the record. Therefore, this factor provides no support for either party with respect to the question of transfer.

Where, as here, the jurisdictional basis of the lawsuit is diversity of citizenship, the court "must apply the choice-of-law rules of the forum state." Acadia Ins. Co. v. Peerless Ins. Co., 679 F. Supp. 2d 229, 237 (D. Mass. 2010). "Under the Massachusetts choice-of-law rules relevant to a dispute arising out of an insurance policy [containing no choice of law provision], this court must apply the law of the state that has the most significant relationship to the insurance contract at issue." Id. See also Bushkin Assoc., Inc. v. Raytheon Co., 393 Mass. 622, 632, 473 N.E.2d 662, 669 (1985) ("in the absence of a choice of law by the parties, their rights 'are determined by the local law of the state which . . . has the most significant relationship to the transaction and the parties'" (quoting Restatement (Second) of Conflict of Laws ("Restatement") § 188(1) (1971)). In evaluating that relationship, "'the contacts to be taken into account . . . include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.'" Bushkin, 393 Mass. at 632, 473 N.E.2d at 669 (quoting Restatement § 188(2)). However, the determination as to which state has the most significant relationship is not  reached by "simply adding up various contacts." Id. Instead, the court should consider those contacts in light of the following factors relevant to the choice-of-law analysis:

> "(a) the needs of the interstate and international systems, (b) the
> relevant policies of the forum, (c) the relevant policies of other
> interested states and the relative interests of those states in the
> determination of the particular issue, (d) the protection of justified
> expectation, (e) the basic policies underlying the particular field of

> law, (f) certainty, predictability and uniformity of result, and (g) ease
> in the determination and application of the law to be applied."

Id. (quoting Restatement § 6(2)).

The instant case concerns the duty to defend and indemnify under a policy between a Pennsylvania insurer having its principal place of business in New York and a Delaware corporation having a principal place of business in Indiana. (Compl. ¶¶ 2-4; Countercl. ¶¶ 2-3). Although the policy at issue is addressed to the insured in Indiana, the record indicates that it was negotiated in Massachusetts and procured on behalf of the insured by a Massachusetts-based insurance broker. (See Lucas Aff. ¶¶ 5-6; Lucas Aff., Ex. A at 2). Thus, both Massachusetts and Indiana have some relationship to the contractual transaction at issue. However, neither of the parties has addressed the other factors that are relevant to the choice-of-law determination, and the record is not sufficiently developed to determine whether consideration of those factors would favor the application of one state's law over another. Consequently, this factor does not weigh in favor of either party.

### Remaining Factors

The remaining factors that the court may consider include the relative convenience of the parties, the possibility of consolidation, the connection between this forum and the issues presented in the litigation, and any state or public interests at stake. For the reasons that follow, this court finds that these factors further support the transfer of this case to Indiana.

With respect to the parties' convenience, the defendants have demonstrated that it would be more convenient for them to litigate this action in Indiana, where Mead Johnson maintains a principal place of business, where its witnesses and documents are located, and where this case could be consolidated with the Indiana Action. Furthermore, notwithstanding National Union's preference for Massachusetts, the plaintiff will not suffer any inconvenience by having to prosecute its claims against Mead Johnson in Indiana. National Union has not shown that it has any particular ties to Massachusetts, none of the underlying Consumer Lawsuits remains here, and National Union's decision to pursue an action against Mead Johnson in the Southern District of Indiana indicates that it considers that court to be a convenient forum. Therefore, consideration of this factor supports a change of venue.

This court also finds that while Massachusetts has some connection to the issues in this case, the interests of justice will best be served by a transfer of the matter to the Southern District of Indiana. As described above, the aim of the transfer statute is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Wiley, 667 F. Supp. 2d at 172. Allowing this case to remain here while a similar action proceeds in Indiana would frustrate that goal. Although there are some notable distinctions between National Union's claims in the two cases, such as different underlying claimants who have asserted different legal claims, both matters will require the court to construe the same coverage provisions and exclusions under the same Policy, and apply them to claims arising out of

"the same conduct and the same advertising and marketing campaign" engaged in by

Mead Johnson to promote Enfamil LIPIL®.   (See Compl., Ex. A ¶ 8; Ex. C ¶ 26, Ex. F ¶

8).  Given the amount of overlap between the cases, a transfer will provide the most

efficient means of resolving the dispute, eliminate the risk of inconsistent rulings,

especially with respect to potential discovery disputes, and protect the parties and

witnesses against the inconveniences and expenses associated with a duplication of effort.

Thus, consideration of this and the other relevant factors supports the conclusion that the

defendants' motion should be allowed and the matter should be transferred to the

Southern District of Indiana.[7]

## B.      Plaintiff's Motion to Dismiss or Stay Counterclaim

National Union has filed a motion to dismiss or stay Mead Johnson's

counterclaim, to the extent it concerns the PBM Litigation, and to allow this case to

continue with respect to the Consumer Lawsuits.  In light of this court's conclusion that

the matter should be transferred, this court recommends that National Union's motion be

denied as moot.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that the "Defendants' Motion to Transfer This Action to the

---

[7]  Because Mead Johnson has satisfied its burden of showing that a transfer is warranted, it is unnecessary to address its alternative request for a stay of this action pending resolution of the Indiana Action.

United States District Court for the Southern District of Indiana, or in the Alternative, to

Stay the Proceedings" (Docket No. 13) be ALLOWED and that the matter be transferred

to the District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

This court also recommends that "National Union's Motion to Dismiss or Stay

Counterclaim" (Docket No. 28) be DENIED AS MOOT.[8]


            / s / Judith Gail Dein                

           Judith Gail Dein

           U.S. Magistrate Judge

---

[8] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).