UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE ) <br> COMPANY OF PITTSBURGH, PA., ) <br>     Plaintiff/Counterclaim-Defendant, ) <br> ) <br> vs. ) <br> ) <br> MEAD JOHNSON & COMPANY and ) <br> MEAD JOHNSON NUTRITION ) <br> COMPANY, ) <br>     Defendants/Counterclaim-Plaintiffs. ) | 3:11-cv-161-RLY-WGH |

**ENTRY ON NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), issued Commercial General Liability Policy No. GL 090-72-27 to Mead Johnson Nutrition Company for the policy period February 10, 2009 to February 10, 2010 (the "National Union Policy" or "Policy"). In the present case, National Union seeks a declaration that it had no duty to defend or indemnify Mead Johnson & Company and Mead Johnson Nutrition Company ("Mead Johnson"), its insured, in connection with ten consumer class action lawsuits ("Consumer Lawsuits") filed by consumers ("Consumer Plaintiffs") of Mead Johnson's Enfamil LIPIL® ("Enfamil") infant formula during the Policy period. These were eventually consolidated and transferred to the Southern District of Florida in a case entitled *In re: Enfamil Lipil Marketing & Sales Practices Litigation*, Case No. 11-MD-02222-COHN/SELTZER. (*See* Defendants' Ex. 18). The court approved settlement of the consolidated action on November 14, 2011. (*Id*.).

1

The Consumer Lawsuits were filed after PBM Products, LLC ("PBM"), a manufacturer of "store brand" infant formula, filed a lawsuit against Mead Johnson captioned *PBM Products, LLC v. Mead Johnson Nutrition Co.*, No. 09-cv-269 (E.D. Va.) (the "PBM Lawsuit"). In its Complaint filed on April 27, 2009, PBM claimed that Mead Johnson's Enfamil LIPIL® advertisements falsely asserted, among other things, that: (1) Enfamil was the only formula that contained docosahexaenoic acid ("DHA") and arachidonic acid ("ARA"), two additives which purportedly promote brain and vision development in infants; (2) Enfamil is a "unique formulation . . . not available in any store brand;" and (3) "[i]t may be tempting to try a less expensive store brand, but only Enfamil LIPIL® is clinically proven to improve brain and eye development." (Defendants' Ex. 3, ¶¶ 15, 49-52). The case went to trial on November 2, 2009, and concluded on November 10, 2009. The jury returned a verdict in favor of PBM and awarded damages in the amount of $13,500,000. The Fourth Circuit Court of Appeals affirmed the jury verdict in April 2011. *PBM Products, LLC, et al. v. Mead Johnson & Company, et al.*, 639 F.3d 111 (4th Cir. 2011).

The Consumer Lawsuits filed by the Consumer Plaintiffs rely on and reference the PBM Lawsuit and, in fact, reference the same comparative advertising for Enfamil that PBM identified in its pleading. (*See generally*, Defendants' Exs. 5-14). The Consumer Plaintiffs generally allege that they did not purchase "generic" or "store brand" infant formula because of Mead Johnson's false and misleading advertisements touting Enfamil LIPIL® as the only infant formula with DHA and ARA. (*Id.*). The Consumer Plaintiffs

allege that other less expensive store brands and private label products contain the same amounts of DHA and ARA as Enfamil. (*Id.*). The Consumer Plaintiffs seek damages from Mead Johnson for their alleged overpayments for infant formula, as well as injunctive and other equitable relief, including the disgorgement of Mead Johnson's profits. (*Id.*).

Mead Johnson contends the claims asserted in the Consumer Lawsuits implicate "personal and advertising injury" coverage under the National Union Policy and that therefore, National Union owed it a duty to defend and indemnify with respect to the Consumer Lawsuits. National Union claims the Consumer Lawsuits are not covered by the Policy, and moves for summary judgment on that ground. For the reasons set forth below, the court **GRANTS** the motion.

**I.     Standard of Review**

Summary judgment should be entered if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The interpretation of an insurance policy is a question of law; therefore, disposition on summary judgment is particularly appropriate. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009).

The provisions of an insurance contract are subject to the same rules of interpretation and construction as are other contract terms. *Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254, 1262 (Ind. Ct. App. 2002) (citation omitted); *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000). The court's primary objective in construing the

language of a contract is to ascertain and enforce the parties' intent as expressed in the language of the contract. *Cotton v. Auto-Owners Ins. Co.*, 937 N.E.2d 414, 416 (Ind. Ct. App. 2010). To that end, the court "'construe[s] the policy as a whole and consider[s] all of the provisions of the contract, not just individual words, phrases, or paragraphs.'" *Id*. (quoting *Gregg v. Cooper*, 812 N.E.2d 210, 215 (Ind. Ct. App. 2004), *trans. denied*). Where the terms of a policy are clear and unambiguous, as in this case, the court applies their plain and ordinary meaning. *Id*. (citation omitted).

**II.    Discussion**

Under Indiana law, an insurer's duty to defend is much broader than the duty to indemnify. *Seymour Manuf. Co., Inc. v. Commercial Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996) (citing *Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991)); *Monroe Guaranty v. Monroe*, 677 N.E.2d 620, 624 (Ind. Ct. App. 1997) (citations omitted). It is the nature of the claim that defines an insurer's duty to defend, not the merits of the claim. *Trisler*, 575 N.E.2d at 1023. "Consequently, if it is determined that an insurer has a contractual duty to defend a suit based upon risks it has insured, the insurer will not be relieved of that obligation, regardless of the merits of the claim." *Id*. (citing *Cincinnati Ins. Co.. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980)).

An insurer's duty to defend is determined by comparing the underlying factual allegations of the complaint with the relevant provisions of the insurance policy. *Indiana Farmers Mut. Ins. Co. v. North Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1272 (Ind.

4

Ct. App. 2009) (citing COUCH ON INSURANCE § 126:3 (3d ed. 2008) ("[T]he legal theory asserted by the claimant is immaterial to the determination of whether the risk is covered . . . . [A] claim clearly excluded from policy coverage cannot be turned into a covered risk by styling the pleadings to fit the policy language.")).  A duty to defend is triggered when the underlying complaint alleges facts[1] that might fall within the coverage of the policy. *Federal Ins. v. Stroh Brewing*, 127 F.3d 563, 566 (7th Cir. 1997) (interpreting Indiana law).

The National Union Policy provides that the policy "'applies to personal and advertising injury' caused by an offense arising out of your business . . . ." (Defendants' Ex. 2 at NU00013).  The Policy defines "personal and advertising injury" to mean "injury . . . arising out of one or more offenses," including an "[o]ral or written publication . . . that slanders or libels a person or organization or . . . disparages a person's or organization's goods, products, or services." (*Id.* at NU00021).  The issue here is whether the allegations of the Consumer Plaintiffs' complaints fall within the "offense" of disparagement within the meaning of the National Union Policy.  Mead Johnson bears the burden of proving that coverage is afforded under the Policy for that "offense." *Erie Ins.*

---

[1] In *Transamerica Ins. Servs. v. Kopko*, the Indiana Supreme Court held that "[t]he duty to defend is determined solely by the nature of the complaint." 570 N.E.2d 1283, 1285 (Ind. 1991). Subsequent cases issued by the Indiana Court of Appeals hold that, before an insurer may deny its insured a defense, the insurer must not only review the allegations of the insured's complaint, but also undertake a "reasonable investigation" into the underlying facts. *See, e.g.*, *Trisler*, 575 N.E.2d at 1023.  In an attempt to reconcile these cases, the Court in *Monroe Guaranty* explained that the duty to investigate comes into play if the facts underlying the complaint are in dispute. 677 N.E.2d at 623. Here, the underlying facts are not in dispute, and neither party raised the issue.

*Group v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir. 1996) (applying Indiana law); *Rose Acre Farms, Inc. v. Columbia Cas. Co.*, 772 F.Supp.2d 994, 1000 (S.D. Ind. 2011) (applying Indiana law).

Mead Johnson argues that the Consumer Plaintiffs' complaints sufficiently allege that they suffered injury arising out of Mead Johnson's publication of materials that disparaged its competitors' lower-priced infant formula. For example, the Consumer Plaintiffs alleged that: (1) the Mead Johnson's advertising disparaged its competitors' products, (*see*, *e.g.*, Defendants' Ex. 7 ¶ 25 ("As part of its deceptive marketing campaign, Mead Johnson has disparaged competing products, particularly store brands . . . ."); Defendants' Ex. 5 ¶ 7 (same); Defendants' Ex. 10 ¶ 7 (same)); (2) Mead Johnson's disparaging advertising violated Section 43 of the Lanham Act, 15 U.S.C. §§ 125(a)(1)(B) and 1125(a)(1)(B), as more particularly alleged in the PBM Lawsuit; and (3) that they were injured as a result. More specifically, they allege:

- "The Plaintiff, Stuart Kaplan, saw and read the statements . . . and purchased Enfamil as a result of and caused by Defendants' statement. . . . As a result . . . Plaintiff was misled into purchasing the Defendants' Enfamil and paying substantially more than he would have paid for what were comparable products (offering the same critical ingredients and the same benefits), thereby resulting in his suffering injury in fact and a loss of money resulting from Defendants' conduct." (Defendants' Ex. 7 ¶ 15).

- "Plaintiff has suffered injury in fact and lost money and property as a result of Defendants' wrongful conduct, in that she paid more for her Product than she would have had she known that the same essential nutrients were available in the same quantities in other less expensive brands of formula." (Defendants' Ex. 6 ¶ 34).

6

- "Plaintiff and Class members paid higher prices for Enfamil LIPIL® than they would have paid for competing infant formulas that provide the same benefits . . . . As a result of the conduct described herein and their purchase of Enfamil LIPIL®, Plaintiff and Class members suffered injury." (Defendants' Ex. 10 ¶¶ 34-35).

- "Plaintiff was misled into purchasing and spending money on products (more than she would have paid for comparable products), resulting in her suffering injury in fact and loss of money or property." (Defendants' Ex. 13 ¶ 15).

An identical argument was raised and rejected in *BASF AG v. Great American Assurance Company*, 522 F.3d 813 (7th Cir. 2008). There, the insured sought defense from its umbrella insurers against numerous class actions which alleged that the insured had wrongfully asserted monopoly control over the market for the thyroid medication, Synthroid, by suppressing and later discrediting a doctor's study, the results of which found that Synthroid was no more effective than cheaper generic drugs. *Id*. at 817. The class action complaints alleged that the insured's wrongful control over the market resulted in consumers and health insurers paying higher prices for Synthroid rather than purchasing lower-cost, equally effective alternatives. *Id*. The insured argued that the class allegations potentially implicated coverage for injury arising out of the offense of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services." *Id*. at 819-20.

The Seventh Circuit Court of Appeals reversed the district court's entry of summary judgment in favor of the insured, and found the umbrella insurers had no duty to

7

defend the insured.  The Court found that in order for the factual allegations of the class plaintiffs' complaints to sufficiently "sketch a claim for the common-law offenses of libel, slander, or disparagement" under Illinois law, they would have to allege that the false statements were made "*about the plaintiff[s]*."  *Id*. at 820 (emphasis in original).  The class plaintiffs' complaints, however, did not claim that the insured made defamatory, libelous, slanderous, or disparaging statements about the class members or their products.  *Id*.  The Court further found that, because Article III standing requires that a plaintiff assert "an injury-in-fact that is particularized to him, the class plaintiffs would not have standing to bring such claims."  *Id*.  The parties injured by the insured's wrongful conduct were not the class plaintiffs, but the doctor whose study the insured sought to discredit, and the producers of the competing thyroid drugs.  *Id*. at 821.  The injury to the class members was purely economic, as reflected by the class plaintiffs' request for economic damages for the class members who overpaid for Synthroid.  *Id*. at 817.

The Consumer Lawsuits were originally filed in Florida, Massachusetts, New Hampshire, Alabama, Colorado, and California; the MDL case was filed in the Southern District of Florida; and the present insurance dispute was filed here in Indiana.  In all of those states, any defamatory or disparaging[2] statements must be of and concerning the

---

[2] A claim of product disparagement must allege: (1) a false statement; (2) that impugns the quality or integrity of plaintiff's goods or services; and (3) special damages.  *Microsoft Corp. v. Zurich American Ins. Co.*, 2001 WL 765871, at *6 (citing Restatement (Second) of Torts § 623A (1977)).

8

plaintiff to be actionable. *Great American Ins. Co. v. Riso, Inc.*, 479 F.3d 158, 161 (1st Cir. 2007) (applying California law); *Sanderson v. Ind. Soft Water Servs., Inc.*, 2004 WL 1784755, at *7 (S.D. Ind. July 23, 2004) (noting the tort of disparagement has "at least some recognition" in Indiana, and is actionable if "it is clear from its content and context that it refers specifically to the plaintiff's products" and citing Speiser, Krause & Gans, THE AMERICAN LAW OF TORTS § 33.5, at 1021 (1992)) and *Heritage Mut. Ins. Co. v. Advanced Polyner Tech., Inc.*, 97 F.Supp.2d 913, 932 (S.D. Ind. 2000)); *American Airlines, Inc. v. Geddes*, 960 So.2d 830, 833 (Fla. App. Ct. 2007); *Mac-Gray Servs., Inc. v. Automatic Laundry Servs. Co.*, 2005 WL 3739853, at *2 (Mass. Super. Ct. Dec. 20, 2005) (citing *Reilly v. Associated Press*, 797 N.E.2d 1204, 1209-10 (Mass. Ct. App. 2003); *Thomas v. Telegraph Publ'g Co.*, 929 A.2d 993, 1006 (N.H. 2007); *Butler v. Town of Argo*, 871 So.2d 1, 16 (Ala. 2003); *Signer v. Pimkova*, 2007 WL 4442327, at *4 (D. Colo. 2007) (citing *Stump v. Gates*, 777 F.Supp. 808, 825 (D. Colo. 1991, *aff'd*, 986 F.2d 1429); *Peper v. Gannett Co., Inc.*, 2003 WL 22457121, at *4 (Cal. Super. Ct. April 4, 2003) (citing *Blatty v. New York Times*, 42 Ca.3d 1033, 1044-45 (1986)). Indeed, any libel, slander or disparagement claim must be "of and concerning" the plaintiff to be actionable. *New York Times Co. v. Sullivan*, 376 U.S. 254, 288 (1964). Thus, Mead Johnson's defamatory or disparaging statements must be of and concerning the Consumer Plaintiffs or their products. Like the class plaintiffs in *BASF*, the Consumer Plaintiffs' make no such allegations in the Consumer Lawsuits. *See Microsoft Corp.*, 2001 WL 765871, at *6 (holding insurer had no duty to defend or indemnify because the underlying

9

complaints "contain no allegations that insured Microsoft disparaged the complainants nor any product created by the complainants"). Any injury they suffered as a result of Mead Johnson's advertising – i.e., buying the more expensive Enfamil LIPIL® product over the generic or store brand formula – is purely economic, and does not fall within the "personal or advertising" offense of disparagement.

In addition, like the class plaintiffs in *BASF*, the Consumer Plaintiffs would not have standing to bring a claim for disparagement. The Consumer Plaintiffs' Complaints do not allege that Mead Johnson disparaged them or their products; as noted above, their injury, if any, arises from their purchase of the more expensive Enfamil formula over the cheaper generic or store brand formula. For these reasons, the court finds National Union had no duty to defend Mead Johnson under the Policy. In addition, because Indiana law provides that an insurer's duty to defend is broader than its duty to indemnify, "an insurer who has no duty to defend has no duty to indemnify its insured either." *Quanta Indem. Co. v. Davis Homes, LLC*, 606 F.Supp.2d 941, 949 (S.D. Ind. 2009) (citing *Pekin Ins. Co. v. Main St. Constr., Inc.*, 2007 WL 1597924, at *4 (S.D. Ind. 2007)).

### III. Conclusion

For the reasons set forth above, National Union's Motion for Summary Judgment (Docket # 57) is **GRANTED**. Mead Johnson's counterclaims remain.

**SO ORDERED** this  19th  day of December 2012.

```
                                RICHARD L. YOUNG, CHIEF JUDGE
                                United States District Court
                                Southern District of Indiana
```

Distributed Electronically to Registered Counsel of Record.